EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Dr. Juan González Aristud<br><br>Demandante-Recurrido<br><br>vs.<br><br>Hospital Pavía y Otros<br><br>Demandados-Peticionarios | Certiorari<br><br>2006 TSPR 98<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2004-1147

Fecha: 13 de junio de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan-Panel II

Juez Ponente:

        Hon. Nestor S. Aponte Hernández

Abogado de la Parte Recurrida:

        Lcdo. Demetrio Fernández

Abogada de la Parte Peticionaria:

        Lcda. Marie L. Quiñones Tañon

Abogado de la Parte Interventora:

        Lcdo. Ernesto F. Rodríguez Suris

Materia: Sentencia Declaratoria, Entredicho, Injunction Provisional y Permanente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Dr. Juan González Aristud

    Demandante-Recurrido

       vs.                CC-2004-1147     Certiorari

Hospital Pavía y Otros

    Demandados-Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

En San Juan, Puerto Rico, a 13 de junio de 2006.

Tenemos la ocasión en el caso de autos, que versa sobre la suspensión de privilegios médicos de cortesía en las facilidades de un hospital privado, de aclarar la naturaleza de un reclamo de debido proceso de ley.

## I.

El doctor Juan González Aristud disfrutaba de privilegios de cortesía para la práctica de la ginecología y obstetricia como parte de la facultad médica del Hospital Pavía (en adelante el Hospital). El 2 de octubre de 1996 el Comité Ejecutivo de la Facultad Médica del Hospital (en adelante el Comité Ejecutivo) suspendió

sumariamente dichos privilegios médicos **mediante una carta suscrita por su Director.** En la referida misiva se le informó al doctor  González Aristud que las razones para la terminación de la relación contractual entre las partes era una combinación de los factores señalados en la Sección 1 (a) del Artículo VII del Reglamento del Hospital (*By-Laws*) que contempla las acciones correctivas sumarias.[1] Se le informó, además, que la decisión respondió a los resultados negativos de las evaluaciones realizadas por la Oficina de programas institucionales y manejo de riesgo del Hospital.[2] Específicamente se le señaló en la comunicación:

> Esta es una situación repetitiva, ya que en investigaciones de pacientes y expedientes suyos atendidos durante el 1992 y 1993, igual situación fue encontrada y fue debidamente advertido sobre el particular. En aquella época. . . se le establecieron unos parámetros  que tenía que observar en su práctica en el Hospital Pavía, en un genuino intento de ayudarlo a mantener el nivel de calidad médica que se exige en esta institución.

---

[1] La referida disposición lee como sigue:

> "Whenever the activities or professional conduct of any practitioner with clinical privileges are below the standards of the Medical Staff, detrimental to patient safety or to the delivery of quality patient care, disruptive to hospital operations, a violation of or contrary to the By-Laws, Rules and Regulations of the Medical Staff, corrective action against such practitioner may be requested by any officer of the Medical Staff, by the Chief of any clinical service, by the Chairman of any standing committee of the Medical Staff, by the Medical Director, by the Executive Director or by the Governing Body."

[2] Las evaluaciones fueron conducidas por sus pares, es decir, por otros médicos.

Por último, mediante dicha carta se le informó sobre su derecho a solicitar una audiencia para cuestionar la suspensión sumaria y el término para hacerlo, según disponía el Reglamento del Hospital (en adelante el Reglamento).

Oportunamente, el doctor González Aristud solicitó al Hospital la aludida audiencia. Informó además que, a su entender, la referida carta de 2 de octubre de 1996 no constituía una notificación adecuada de la suspensión de sus privilegios debido a que no especificaba las violaciones imputadas. González Aristud y la administración del Hospital se pusieron de acuerdo en que la audiencia ante un Comité Evaluador Ad-Hoc integrado por tres miembros de la Facultad Médica del Hospital, según dispone el Artículo VIII, Sec. 1(e) del Reglamento, sería celebrada el 7 de noviembre de 1996. A esos efectos, mediante una carta con fecha de 24 de octubre de 1996, **el Director del Comité Ejecutivo le informó a González Aristud las razones específicas para suspender sus privilegios.**[3]

---

[3] Fueron las siguientes:

1. Incidencia alta de errores y complicaciones en casos rutinarios;

2. Ausencia de indicaciones clínicas justificadas y documentadas en los expedientes;

3. Pobre juicio clínico en manejo indicado para diagnóstico de complicaciones postoperatorias;

4. Ausencia de indicaciones concretas documentadas para realizar cesáreas de emergencia;

5. Ausencia en el expediente clínico de órdenes pre-operatorias;

6. Ausencia de indicaciones en el expediente clínico que justifique el procedimiento realizado; y

Luego de celebrada la audiencia ante el Comité Ad-Hoc, éste revocó la determinación de suspender los privilegios del doctor González Aristud. **En la notificación de dicha determinación no se expresaron las razones para revocar la decisión del Comité Ejecutivo.**

Inconforme, el Comité Ejecutivo recurrió dicha determinación ante la Junta Asesora del Hospital (*Governing Body*) según el procedimiento contemplado en el Reglamento a esos efectos. La Junta Asesora acogió la apelación presentada y citó a las partes a una audiencia a principios de enero de 1997. Se apercibió a las partes de su derecho a presentar sus argumentos por escrito y el Comité Ejecutivo así lo hizo. Por su parte, el doctor González Aristud únicamente argumentó su posición de manera oral.[4] A finales de enero de 1997, la Junta Asesora notificó a las partes su decisión de revocar al Comité Evaluador Ad-Hoc y reafirmar la suspensión de los privilegios de González Aristud. En esta notificación tampoco se expresaron las razones para la determinación.

En vista de lo anterior, en febrero de 1998 el doctor González Aristud presentó un escrito titulado "Petición" ante el Tribunal de Primera Instancia alegando, en síntesis, que al confirmar la suspensión sumaria de sus privilegios el Hospital había violentado su derecho a un debido proceso de

---

7. Ausencia de pruebas diagnósticas de laboratorio para diagnóstico de complicación.

8.

[4] La transcripción de los procedimientos ante el Comité Evaluador Ad Hoc no pudo ser presentada porque la grabación había sido robada del automóvil de la taquígrafa.

ley. Para fundamentar su reclamo <u>González Aristud argumentó que no había sido debidamente notificado de los cargos en su contra y que la decisión de la Junta Asesora del Hospital fue arbitraria ya que carecía de determinaciones de hechos y conclusiones de derecho</u>. Reclamó una compensación en daños y perjuicios por pérdida de ingresos, daños a su reputación y angustias mentales, así como un *injuction* mediante el cual se ordenara al Hospital que le restituyera los privilegios. En marzo de 1998 el Hospital contestó la demanda y adujo, entre otras cosas, que la misma no exponía hechos que justificaran la concesión de un remedio.

Así las cosas, en marzo de 1999 el Tribunal de Primera Instancia desestimó por académica la petición de *injuction* basándose en que había expirado el término de vigencia del contrato entre las partes. Dicha determinación advino final y firme, quedando pendiente la acción en daños y perjuicios por alegada violación al debido proceso de ley.

En octubre de 2003 el Hospital presentó una solicitud de sentencia sumaria en la que argumentó que procedía la desestimación de la pendiente acción en daños y perjuicios. Señaló que había cumplido con el procedimiento establecido en el Reglamento para la suspensión de los privilegios de cortesía de la facultad médica. Por su parte, el doctor González Aristud se opuso a la sentencia sumaria argumentando que su suspensión no cumplió con el debido proceso de ley porque no se le notificaron los hechos que dieron lugar a la misma y porque la determinación de la Junta Asesora no expresó los fundamentos por los cuales se

apartó de la decisión del Comité Ad Hoc. El Hospital replicó que desde el comienzo se le había indicado que la suspensión se debía a su falta de pericia y deficiente manejo y cuidado de los pacientes.

En junio de 2004 el Tribunal de Primera Instancia declaró no ha lugar la moción de sentencia sumaria al concluir que existía controversia sobre si el Hospital había cumplido con el procedimiento establecido por el Reglamento para apelar las suspensiones. Inconforme con dicha determinación, el Hospital solicitó oportunamente al Tribunal de Apelaciones que la revisara. Dicho foro rehusó expedir el auto de *certiorari* solicitado por entender que en efecto existía controversia sobre si el Hospital había incumplido con su Reglamento y, por ende, había violentado el debido proceso de ley al que alegadamente tenía derecho el doctor González Aristud.

Todavía inconforme, el Hospital acudió ante nos mediante recurso de *certiorari* para cuestionar la decisión del Tribunal de Apelaciones. En reconsideración, expedimos el auto el 29 de abril de 2005 y con el beneficio de la comparecencia de ambas parte, procedemos a resolver.

## II.

### A.

La garantía de que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley está consagrada tanto en el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico, como en las

Enmiendas V y XIV de la Constitución de Estados Unidos. 1 L.P.R.A. Como es sabido, el referido debido proceso de ley se manifiesta en dos modalidades, una sustantiva y otra procesal. Cuando un pleito gira en torno a que la interferencia con los intereses de libertad y propiedad de las personas se lleve a cabo mediante un procedimiento justo y equitativo, nos encontramos ante la vertiente procesal de la garantía constitucional sobre el debido proceso de ley. López Vives v. Policía de P.R., 118 D.P.R. 219 (1987). Por otra parte, cuando un pleito gira en torno a la validez constitucional de una ley o actuación estatal que afecte de manera irrazonable los intereses libertarios o propietarios de una persona, se trata de una controversia sobre la vertiente substantiva de la garantía constitucional sobre el debido proceso de ley. Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987).

Dejándose llevar por las alegaciones de la demanda, los foros *a quo* consideraron los reclamos del recurrido, doctor González Aristud, como un asunto relativo a la garantía constitucional de debido proceso de ley en su modalidad procesal. Erraron al así proceder.

El debido proceso de ley, al igual que la gran mayoría de las garantías constitucionales, protege a las personas esencialmente frente al Estado. Dicho de otro modo, por su propia naturaleza, la gran mayoría de los derechos individuales de origen constitucional integran limitaciones al ejercicio de los poderes del Estado y no a las actuaciones privadas. Por eso para que proceda plantear

judicialmente una alegada violación a un derecho constitucional, de ordinario es necesario que haya mediado una actuación del Estado, o como se le conoce más corrientemente, una acción del Estado o acción estatal. Véase, Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, Vol. II, pág. 799 (1988); Véanse además: NCAA v. Tarkanian, 488 U.S. 179 (1988)("Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be."); Burton v. Wilmington Parking Authority, 365 U.S. 715, 722 (1961)(As a general matter the protections of the Fourteenth Amendment do not extend to "private conduct abridging individual rights."); Shelley v. Kraemer, 334 U.S. 1, 13 (1948); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349 (1974); DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989); Ponce v. Basketball Federation of P.R., 760 F2d 375 (1985).

Lo anterior significa que en casos como el de autos, la acción estatal es un requisito indispensable para que proceda un reclamo constitucional sobre debido proceso de ley. El Hospital Pavía es un ente privado que rige mediante su Reglamento las relaciones de privilegios con los médicos que atienden pacientes en el mismo. Por ende, en el presente caso no ha mediado ninguna acción estatal y contrario al razonamiento de los foros recurridos, no estamos ante una

posible violación al derecho constitucional a un debido proceso de ley.

En su alegato ante nos, el recurrido asume una posición contradictoria ya que, por un lado, reconoce que no está en controversia propiamente un asunto de Derecho Constitucional, pero continúa amparando su reclamo en la falta de debido proceso de ley por la ausencia de "determinaciones de hechos o conclusiones de derecho" en la notificación de la decisión de la Junta Asesora.

En el contexto del Derecho Administrativo es doctrina claramente establecida que, como regla general, la persona afectada por una determinación gubernamental en un proceso adjudicativo tiene derecho —como cuestión de debido proceso de ley constitucional— a que se le provean determinaciones de hecho y conclusiones de derecho que justifiquen la decisión. Rivera Santiago v. Secretario. de Hacienda, 119 D.P.R. 265 (1987). Sin embargo, nunca hemos extendido dicho requisito como imperativo constitucional a controversias entre partes privadas.

**El proceso debido en virtud de un contrato no es el debido proceso de ley garantizado constitucionalmente** y cuyo quebrantamiento implica violación a derechos fundamentales.[5]

---

[5] Para una discusión más a fondo de este asunto, véase: H. Meléndez Juarbe, *Derecho Administrativo*, Parte VI (a publicarse en 74 Rev. Jur. UPR _ (2005). El Profesor Meléndez Juarbe distingue lúcidamente entre el *"debido proceso de ley* en el sentido constitucional" y el *"proceso debido por ley* en el sentido estatutario" y señala:

"Aunque en ocasiones una violación del proceso debido por la ley podría implicar una violación al debido proceso de ley, ello no siempre es así. De

Nuestras expresiones en Hernández v. Asoc. Hosp. del Maestro, 106 D.P.R. 72 (1977), en torno a que los reglamentos de los hospitales privados deben cumplir con los "requisitos mínimos del debido proceso de ley" deben ser entendidas como una referencia a los requisitos mínimos exigibles en virtud de una relación contractual. En tal caso, si uno de los contratantes incumple, el otro puede darla por resuelta sin necesidad de la intervención de los tribunales. Constructora Bauzá v. García López, 129 D.P.R. 579, 593 (1991). Esto es así debido a que los reglamentos de una organización son parte del contrato que regula la relación entre dicha entidad y sus miembros. En ese sentido, los reglamentos constituyen la ley entre las partes, en tanto los mismos no atenten contra el ordenamiento jurídico, la moral ni el orden público. Amador Padilla v. Concilio Iglesia Universal, 150 D.P.R. 571 (2000).

A la luz de lo anterior, resulta evidente que **la controversia ante nos se limita a determinar si en las circunstancias del caso de autos, procede adjudicar mediante sentencia sumaria si el Hospital cumplió o no con su Reglamento** al suspender los privilegios del doctor González Aristud. No están involucrados aquí derechos fundamentales que tengan su origen en la Constitución, sino derechos privados de origen reglamentario.

---

lo contrario, cualquier incumplimiento por [una] agencia [administrativa] de garantías procesales reglamentarias implicaría una violación constitucional y, concebiblemente, una acción en daños y perjuicios bajo el artículo 1802 del Código Civil, bajo la ley de derechos civiles federal, o ambas." (Citas omitidas).

**B.**

La sentencia sumaria es un mecanismo extraordinario para aligerar la tramitación de los pleitos prescindiendo de la celebración de juicios en los méritos. Utilizada correctamente contribuye a la importante labor de descongestionar los tribunales. Pilot Life Insurance Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994); Piñero v A.A.A., 146 D.P.R. 890 (1988).

Para que proceda dictar una sentencia sumaria la parte que la promueve tiene que establecer su derecho con claridad y tiene que demostrar que no existe controversia sustancial sobre ningún hecho material, es decir, sobre ningún componente de la causa de acción. El tribunal debe analizar además si hay alegaciones en la demanda que no han sido refutadas por la prueba que acompaña la moción de sentencia sumaria. Corp. Presiding Bishop v. Purcell, 117 D.P.R. 714 (1986).

Cualquier duda sobre la existencia de una controversia de hechos *bona fide* debe ser resuelta contra la parte que solicita la sentencia sumaria. Mamt. Adm. Service Corp v. E.L.A., 152 D.P.R. 599 (2000); Corp. Presiding Bishop v. Purcell, *supra* (1986). No deben resolverse mediante dicho mecanismo los casos muy complejos, aquellos en que falte información sobre hechos pertinentes, ni aquellos en los que esté involucrado el interés público.

Por otro lado, la parte oponente a la sentencia sumaria tiene que controvertir la prueba presentada por la parte solicitante. No debe cruzarse de brazos ni meramente

oponerse descansando en sus alegaciones. <u>Luan Investment v.</u> <u>Rexach Construction Co.</u>, 152 D.P.R. 652 (2000); <u>Audiovisual</u> <u>Lang v. Sist. Est. Natal Hnos.</u>, 144 D.P.R. 563 (1997). Debe tenerse presente "que en un procedimiento de sentencia sumaria las declaraciones juradas que contienen sólo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio. . ." <u>Corp. Presiding Bishop v.</u> <u>Purcell</u>, *supra*. pág. 722.

No obstante, el mero hecho de que el promovido no se oponga con evidencia que contravenga la presentada por el solicitante de la sentencia sumaria no implica necesariamente que ésta proceda. *Id*. pág. 721. Es imprescindible que se demuestre tener razón como cuestión de derecho.

## III.

En su Artículo VII, Sec. 2(a), el Reglamento del Hospital regula las suspensiones sumarias y dispone:

> **[T]he Executive Director... shall have the authority to suspend summarily the medical Staff membership status, or all or any portion of the clinical privileges, of a practitioner...** when a practitioner willfully disregards these By-Laws, or other Hospital policies, or **whenever his conduct requires that immediate action be taken** to protect the life of any patient(s), or **to reduce the substantial likelihood of immediate injury or damage to the health or safety of any patient** presently in the Hospital or likely to be admitted... Such a summary suspension shall become effective immediately upon imposition. **Thereafter, the Executive Director shall... promptly give special notice thereof to the practitioner.** (Énfasis nuestro).

Según argumenta el Hospital, el desempeño del Dr. González Aristud durante los años en que tuvo privilegios de cortesía en el Hospital fue deficiente y redundó en perjuicio a la salud de varias pacientes y riesgos innecesarios a muchas otras. Del expediente del caso de autos se desprende evidencia más que suficiente para avalar esa conclusión. Dado que el Reglamento disponía que los privilegios médicos podían ser suspendidos a aquellos médicos que no demostraran competencia en su labor, y que de ordinario no intervenimos con los criterios adoptados por las juntas directivas de los hospitales en la reglamentación de sus facultades médicas, Hernández v. Asoc. Hosp. del Maestro, *supra*, pág. 81, es claro que la suspensión de los privilegios de González Aristud no constituyó un incumplimiento de la relación contractual entre las partes.

Examinando detenidamente el expediente del caso, llegamos a la conclusión de que **no existen hechos materiales en controversia ni alegaciones de la parte demandante-recurrida que no hayan sido debidamente refutadas** por la peticionaria. Los únicos dos asuntos en controversia son: (1) si la notificación de los cargos en su contra recibida por Dr. González Aristud —cuyo contenido no está en duda— fue adecuada, y (2) si la notificación de la determinación final de la Junta Asesora —cuyo contenido tampoco está en duda— fue adecuada. Ambas son cuestiones de derecho y por ende, **el hecho de si el Hospital cumplió o no con su**

**Reglamento es susceptible de ser adjudicado mediante sentencia sumaria.**[6]

Veamos en primer lugar si la notificación de las razones por las cuales fueron suspendidos los privilegios médicos de González Aristud fue adecuada.

El Reglamento del Hospital en su Artículo VIII, Sec. 1 (d) dispone los requisitos con los que debe cumplir la notificación de una vista en la que se cuestionará una suspensión de privilegios médicos. Dicha disposición señala, en lo pertinente, lo siguiente:

> The notice of hearing **shall state in concise language the acts, accusations, complaints or omissions** with which the practitioner is charged... (Énfasis nuestro).

Como vemos, lo que requiere el reglamento es que la notificación utilice un lenguaje conciso o sucinto. Según señalamos anteriormente, además de citarle las disposiciones reglamentarias pertinentes, el Director Ejecutivo del Hospital le informó al doctor González Aristud que las razones específicas para suspender sus privilegios fueron las siguientes:

1. Incidencia alta de errores y complicaciones en casos rutinarios;

2. Ausencia de indicaciones clínicas justificadas y documentadas en los expedientes;

3. Pobre juicio clínico en manejo indicado para diagnóstico de complicaciones postoperatorias;

---

[6] Cabe destacar que el caso de autos no es particularmente complejo ni plantea asuntos de alto interés público.

4. Ausencia de indicaciones concretas documentadas para realizar cesáreas de emergencia;

5. Ausencia en el expediente clínico de órdenes pre-operatorias;

6. Ausencia de indicaciones en el expediente clínico que justifique el procedimiento realizado; y

7. Ausencia de pruebas diagnósticas de laboratorio para diagnóstico de complicación.

Los referidos señalamientos no hacen referencia a casos específicos, sin embargo, surge del expediente que dichas fallas habían sido señaladas repetidamente al doctor González Aristud a raíz de las evaluaciones periódicas a las que estaba sujeto. Además, el recurrido tuvo acceso a los pormenores de la prueba en la primera vista ante el Comité Ad Hoc –cuya corrección no cuestiona. Por lo tanto, es inmeritoria la alegación de González Aristud en torno a que no ha sido debidamente notificado de los señalamientos en su contra.

En segundo lugar debemos determinar si el Hospital violó su Reglamento –y por ende incumplió su obligación contractual frente al recurrido– al no acompañar determinaciones de hecho y conclusiones de derecho con la notificación de la decisión de la Junta Asesora.

El Artículo VIII, Sec. 3 del Reglamento regula las apelaciones de las decisiones del Comité Ejecutivo ante la Junta Asesora del Hospital y dispone una serie de requisitos y garantías para que las partes puedan comparecer y participar efectivamente del proceso. De las alegaciones de las partes se desprende que el proceso en sí ante la Junta

Asesora cumplió con dichos requisitos. Lo único que está en controversia es si la notificación de la determinación desfavorable al doctor González Aristud fue suficiente. En cuanto a esto, el inciso (f) del referido Artículo VIII, Sec. 3 dispone:

> Within ten (10) working days after the conclusion of the Appellate Review **the Governing Body shall render a written final decision and shall deliver copies in person or by certified or registered mail thereof to the affected practitioner** and to the Executive Committee. The final decision of the Governing Body following the appeal shall be effective immediately and shall not be subjected to further review.

Siendo esa la única cláusula del Reglamento pertinente a la controversia de autos, resulta claro que el reclamo del doctor González Aristud es inmeritorio. El Hospital venía obligado a tomar una decisión final y notificarla por escrito dentro de los próximos 10 días después de la vista. No está en duda que así lo hizo.

Dado que **no surge de ninguna disposición reglamentaria el requisito de que la decisión final de la Junta Asesora contenga determinaciones de hecho y conclusiones de derecho,** resolvemos que erró el Tribunal de Apelaciones al negarse a revisar la resolución emitida por el Tribunal de Primera Instancia que denegó la solicitud de sentencia sumaria presentada por el demandado-recurrente, Hospital Pavía.

Por los fundamentos expresados, procede que se revoque la sentencia recurrida y se desestime la reclamación en daños y perjuicios incoada por el doctor González Aristud.

Se dictará sentencia de conformidad.


                                    JAIME B. FUSTER BERLINGERI
                                         JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Dr. Juan González Aristud

    Demandante-Recurrido

        vs.                         CC-2004-1147
Certiorari

Hospital Pavía y Otros

    Demandados-Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 13 de junio de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia recurrida y se desestima la reclamación en daños y perjuicios incoada por el doctor González Aristud.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton no intervino. La Juez Asociada señora Rodríguez Rodríguez está inhibida.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo