EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Tierras de Puerto Rico<br><br>Peticionarios<br><br>vs.<br><br>Moreno Ruiz Developer Corp. y otros<br><br>Recurridos | Certiorari<br><br>2008 TSPR 128<br><br>174 DPR \_\_\_\_ |

Número del Caso: CC-2007-405


Fecha: 24 julio de 2008


Tribunal de Apelaciones:

        Región Judicial de Mayagüez-Aguadilla, Panel IX

Juez Ponente:

        Hon. Carlos Rodríguez Muñiz


Abogado de la Parte Peticionaria:

        Lcdo. Noel A. Arce Bosques


Abogados de la Parte Recurrida:

        Lcdo. Fernando E. Agrait
        Lcdo. Luis A. Loperena González


Materia: Reclamación de Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Tierras de Puerto
Rico

      Peticionarios

         vs.                        CC-2007-405    *CERTIORARI*

Moreno Ruiz Developer Corp.
y otros

      Recurridos


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 24 de julio de 2008

Los hechos que originan el recurso ante nuestra consideración se retrotraen al 4 de agosto de 2000 cuando la Asamblea Legislativa aprobó la Ley de la Reserva Agrícola del Valle del Coloso, con el propósito de proteger unos terrenos en la zona noreste de la isla que poseen condiciones idóneas para la agricultura, Ley 142 del 4 de agosto de 2000, 5 L.P.R.A. sec. 1731, *et seq.*

Dicho estatuto dispuso que la Junta de Planificación debía, en coordinación con el Departamento de Agricultura, promulgar y adoptar un Reglamento de Zonificación Especial que ordenara las fincas comprendidas dentro del denominado Valle del Coloso. Además, la Ley 142

le prohibía a la Junta de Planificación, a la Administración de Reglamentos y Permisos (ARPE) y a los gobiernos municipales autorizar segregaciones para la creación de fincas menores de diez cuerdas en el área protegida.

No obstante, el 8 de julio de 2003 ARPE aprobó la segregación de la propiedad aquí en controversia, a solicitud de la Comunidad Agrícola Bianchi. La propiedad segregada está situada en el Barrio Guanábano del término municipal de Aguada y cuenta con un área superficial de 5,735.5265 m.c., equivalente a 1.4593 cuerdas. En dicho momento, la Autoridad de Tierras era arrendataria de los predios de terreno que forman la Reserva Agrícola del Valle del Coloso.

En el mes de febrero del año 2004, se presentó en el Departamento de Estado el plano de los terrenos protegidos y el Reglamento de Zonificación Especial para las reservas agrícolas de Puerto Rico. Este último entró en vigor el 13 febrero de 2004. Un mes más tarde, la codemandada Ruiz Santiago adquirió, mediante escritura de segregación, liberación y compraventa el solar segregado que pertenecía a la Comunidad Agrícola Bianchi.

De otra parte, el 9 de julio de 2004 la Autoridad de Tierras presentó una petición de expropiación forzosa para adquirir tres predios de terreno con el propósito de ser destinados al proyecto de la Reserva Agrícola del Valle del Coloso, emplazándose con copia de dicha petición a la

Comunidad Agrícola Bianchi. Unos días más tarde, la Sala de Expropiaciones del Tribunal de Primera Instancia de San Juan aprobó la solicitud de expropiación forzosa, en el caso civil número KEF-2004-746(1002). Es menester señalar que entre los terrenos expropiados se encontraba la propiedad en controversia.

A pesar de ello, el 16 de agosto de 2005 la señora Ruiz Santiago le vendió el predio segregado a Moreno Ruiz Developer Corporation. Luego de efectuada la compraventa, la Corporación adquirente le sometió una solicitud a ARPE para la segregación de dos solares. La misma fue aprobada parcialmente, mediante resolución de 20 de septiembre de 2005. Aproximadamente tres meses después, y con el fin de confirmar la ubicación y delimitación del terreno segregado, el Agrimensor William Guzmán Morales, Jefe de la División de Agrimensura de la Autoridad de Tierras, visitó el lugar e identificó la propiedad dentro del plano de expropiación sometido. Además, emitió una certificación e ilustración de la ubicación del área afectada. Un año más tarde, el mismo agrimensor realizó una segunda certificación en la que reiteró lo expresado en la primera.

Luego de que Moreno Ruiz Developer hiciera caso omiso a las solicitudes para que cesara de hacer movimientos de terreno en la propiedad segregada y expropiada, la Autoridad de Tierras, el 13 de febrero de 2006, presentó una demanda sobre *injunction* preliminar y permanente y daños y perjuicios en contra de Moreno Ruiz Developer

Corporation, Comunidad Agrícola Bianchi y Teresa Ruiz Santiago ante el Tribunal de Primera Instancia, Sala Superior de Aguada.

En la misma, adujo que el terreno segregado era parte integral de la Reserva del Valle del Coloso y, por ende, de la finca por ella expropiada, razón por la cual el terreno en controversia le pertenecía a dicha agencia y al Estado Libre Asociado.

Además, la Autoridad de Tierras argumentó que los permisos de segregación otorgados por ARPE, tanto a la Comunidad Agrícola Bianchi como a Moreno Ruiz Developer, eran inválidos por ser contrarios a la Ley 142 y a la política pública vigente al momento de emitirlos y que por tal razón, las escrituras de segregación eran nulas. En la alternativa, la agencia estatal alegó la nulidad de las escrituras de segregación y compraventa, otorgadas a favor de los codemandados Ruiz Santiago y Moreno Ruiz Developer, por haberse suscrito con posterioridad a que entrara en vigor el Reglamento de Zonificación Especial para las reservas agrícolas de Puerto Rico.

De otra parte, la Autoridad de Tierras sostiene que la Comunidad Agrícola Bianchi y la señora Ruiz Santiago actuaron con conocimiento de las restricciones existentes en la Reserva Agrícola del Valle del Coloso, por lo que sabían desde su autorización que las escrituras otorgadas eran nulas *ab initio* así como que las segregaciones obtenidas eran contrarias a la Ley 142; ello bajo el

fundamento de que la Comunidad Agrícola Bianchi era, al momento de solicitar la segregación, la arrendadora de la Autoridad de Tierras con respecto a los predios protegidos[1], y que la señora Ruiz Santiago se desempeñaba como empleada de ARPE en las mismas oficinas donde se expidieron los permisos en controversia. Por otro lado, nos señala que las vistas públicas para la preparación del Reglamento de Zonificación Especial habían sido celebradas por la Junta de Planificación los días 15 y 19 de febrero de 2002 y 12 y 13 de febrero de 2003, eso es, antes de la aprobación de la segregación.

Añade la Agencia que Moreno Ruiz Developer indujo a error a ARPE en la obtención de los permisos de segregación; ello al calificar la zona como RpC2-III E-5, siendo la calificación correcta AR-2. Finalmente, señala la Agencia que este mismo codemandado comenzó a remover, ilegalmente, la corteza terrestre del terreno objeto de la controversia provocando que el suelo se erosionara, lo que ha causado daños sustanciales que pueden ser irreparables. Alegadamente dicha conducta, a su vez, le ha causado perjuicios a la propiedad e intereses de la Autoridad de Tierras al no permitirle el libre disfrute de su derecho.

---

[1] En el caso civil número KAC03-0863(504) ante el Tribunal de Primera Instancia, Sala Superior de San Juan, sobre Incumplimiento de Contrato, Expropiación a la Inversa, Daños y Perjuicios y Cobro de dinero, se ventilan asuntos relacionados a una alegada obligación que tenía la Comunidad Agrícola Bianchi de notificarle a la Autoridad de Tierras sobre, y previo a, la segregación y venta de alguno de los terrenos arrendados, entre otros asuntos.

En conclusión, la Autoridad estimó que las actuaciones conjuntas, coordinadas o independientes de todos los demandados, que consistieron en efectuar segregaciones ilegales y hacer movimientos de terreno afectando la capa de corteza terrestre de una propiedad del Estado, contribuyó, asistió, facilitó y afectó adversamente la Reserva del Coloso. Por consiguiente, sostiene que todos los demandados son solidaria, personal y mancomunadamente responsables a la parte demandante en daños. A tenor con lo anterior, la Autoridad de Tierras le solicitó al tribunal de instancia que ordenara, además de la remuneración económica por los daños y perjuicios sufridos, el cese y desista de todo tipo de actividades sobre el suelo protegido, ya que se estaba afectando la integridad de la Reserva del Coloso.

Luego de varios incidentes procesales, que incluyeron una vista evidenciaria en relación con la solicitud de la orden de cese y desista, el tribunal declaró con lugar dicha solicitud. Posteriormente, la Comunidad Agrícola Bianchi solicitó la desestimación de la reclamación en su contra bajo el fundamento de que la demanda no exponía una reclamación que justificara la concesión de un remedio. Adujo, que de las alegaciones de la demanda surgía que le había vendido a Ruiz Santiago el terreno objeto de esta controversia tres meses antes de que la Autoridad de Tierras presentara la petición de expropiación. Añadió, que no era parte de la compraventa que se efectuó entre Ruiz

Santiago y Moreno Ruiz Developer. Por lo tanto, sostuvo que de los hechos bien alegados en la demanda no surgía una causa de acción en su contra.

La Autoridad de Tierras se opuso a la desestimación alegando que la segregación del predio de terreno de 1.4593 cuerdas, propiedad de la Comunidad Bianchi, fue autorizada por ARPE después de que se aprobara la Ley de la Reserva del Valle del Coloso y en contravención con la misma, ya que ésta disponía que no se podían aprobar segregaciones de menos de diez cuerdas. En la alternativa, la referida agencia adujo que la compraventa entre la Comunidad Agrícola Bianchi y Ruiz Santiago era nula, ya que la escritura fue otorgada con posterioridad a la aprobación del Reglamento de Zonificación Especial, el cual proveía para que la segregación de terrenos en la Reserva no fuera menor a diez cuerdas en un área zonificada AR-2, como es el terreno en controversia en el presente caso.

En una segunda solicitud de desestimación, la Comunidad Agrícola Bianchi añadió que al momento de ARPE autorizar la segregación del terreno no estaba vigente el Reglamento de Zonificación Especial ni el plano de delimitación del área de la Reserva, por lo que la reserva no había sido definida. A ello, la Autoridad de Tierras replicó que lo que hizo el referido Reglamento fue ampliar la cantidad de tierras que especifica la Exposición de Motivos de la Ley que crea la Reserva.

El 4 de enero de 2007, el tribunal de instancia emitió sentencia parcial, en la cual desestimó la reclamación contra la Comunidad Agrícola Bianchi respecto a la demanda incoada por la Autoridad de Tierras. Además, dicho foro dejó sin efecto la orden de paralización de las obras que realizaba Moreno Ruiz Developer en los terrenos en controversia al concluir que tal causa de acción era accesoria a la de la Comunidad Agrícola Bianchi, ya que se fundamentaba en que los terrenos eran parte de la finca expropiada.

Entendió el foro primario que la Ley de la Reserva del Valle del Coloso no definió el ámbito territorial protegido, ni el área comprendida dentro de la misma. Señaló que el artículo 2 de la Ley 142 requería que se aprobara un Reglamento de Zonificación Especial, el cual entró en vigor después de la aprobación de la segregación por ARPE. Interpretó el tribunal de instancia que el Artículo 5 de la referida Ley 142 requería un plano que deslindara la reserva, el cual no se había preparado por lo que no había forma física para determinar cuál propiedad ubicaba dentro de los límites de la misma. En virtud de lo anterior, el tribunal de instancia concluyó que no había prohibición alguna que evitara aprobar la segregación del terreno propiedad de la Comunidad Agrícola Bianchi.

Insatisfecha con la decisión, la Autoridad de Tierras acudió al Tribunal de Apelaciones, reiterando su posición en contra de la desestimación de la demanda y del

levantamiento de la orden de cese y desista. El 20 de abril de 2007, el foro apelativo intermedio dictó sentencia en la cual confirmó la del tribunal de instancia en todos sus extremos.

Aun inconforme con el dictamen, la Autoridad de Tierras acudió —mediante recurso de *certiorari*— ante este Tribunal, imputándole al foro apelativo intermedio haber errado al:

> …CONFIRMAR LA SENTENCIA PARCIAL DEL TRIBUNAL DE PRIMERA INSTANCIA QUE DESESTIMARA LA ACCIÓN INCOADA ADUCIENDO QUE NO HAY CONTROVERSIA SOBRE HECHOS POR HABER LA CODEMANDADA COMUNIDAD AGRÍCOLA BIANCHI INC., VENDIDO EL PREDIO EN CONTROVERSIA AL NO EXISTIR PROHIBICION LEGAL PARA ELLO, Y CONSECUENTEMENTE DEJAR SIN EFECTO LA PARALIZACIÓN DE OBRAS DE LA CODEMANDADA CORPORACIÓN MORENO-RUIZ.

Expedimos el recurso y ordenamos la paralización de toda construcción en las tierras en controversia hasta que otra cosa se dispusiera. Estando en condiciones de resolver, procedemos a así hacerlo.

I

La Constitución del Estado Libre Asociado de Puerto Rico establece en el Artículo VI, Sección 19, que "será política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad." Véase: Maldonado v. Junta de Planificación, res. el 10 de mayo de 2007, 2007

TSPR 87; Misión Industrial v. J.C.A., 145 D.P.R. 908 (1998); Paoli v. Rodríguez, 138 D.P.R. 449 (1995).

Conforme a dicho mandato constitucional, hemos expresado que "ha sido política pública del Gobierno del Estado Libre Asociado de Puerto Rico dirigir el proceso de planificación de nuestra isla hacia un desarrollo integral sostenible asegurando el juicioso uso de las tierras y fomentando la conservación de los recursos naturales para el disfrute y beneficio de todos." A.R.P.E. v. Rivera Morales, 159 D.P.R. 429 (2003), citando al documento Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico, 23 R.P.R. sec. 650.821 *et seq.* Véase además, Maldonado v. Junta de Planificación, ante.

De acuerdo a la política pública antes mencionada, la Asamblea Legislativa, en reconocimiento de la importancia del sector agrícola como actividad necesaria para producir alimentos, generar empleos, conservar el ambiente, y con el fin de promover el uso de los terrenos agrícolas de alta productividad, aprobó, entre otras, la Ley para la Reserva Agrícola del Valle del Coloso, Ley Núm. 142 de 4 de agosto de 2000, 5 L.P.R.A. sec. 1731 *et seq.*, con el propósito de proteger los terrenos de alto rendimiento agrícola comprendidos dentro del Valle del Coloso. En particular, el Artículo 1 de la referida Ley, que declaró el Valle del Coloso como reserva agrícola, establece:

> El Gobierno de Puerto Rico, reconoce la agricultura como una actividad de vital e imperiosa importancia para el bienestar económico

del país y declara como política pública la reservación de los terrenos comprendidos dentro del Valle del Coloso como reserva agrícola. La Asamblea Legislativa de Puerto Rico reconoce que los terrenos que componen el Valle del Coloso, en posesión de [características] físicas, topográficas y geológicas idóneas para la agricultura y ecoturismo deben destinarse para uso exclusivo de la producción agrícola y desarrollo eco-turístico y, en consecuencia de ello, declara esta zona como reserva agrícola del país asegurando, además, el fortalecimiento de la zona noreste de la Isla.

Por otro lado, y con la intención de describir cuales serían los terrenos protegidos, la Ley Núm. 142, ante, además de afirmar que la zona albergada es aquella conocida como el Valle del Coloso, explicó en la Exposición de Motivos:

El Valle del Coloso es un área comprendida por unas 2,985 cuerdas de terreno que hoy poseen intacta su capacidad agrícola para la producción de caña de azúcar, frutos menores… El Valle del Coloso está formado por una extensa franja de terreno comprendida por los límites territoriales de los municipios de Aguada, Aguadilla y Moca. De la cabida total de 2,985 cuerdas con alto potencial agrícola. De éstas, sólo 1,700 cuerdas se encuentran cultivadas con caña de azúcar. Las mismas se distribuyen de la siguiente manera: 113 cuerdas en el Municipio de Moca, 354 cuerdas en el Municipio de Aguadilla y 1,233 cuerdas en el Municipio de Aguada. La carretera número 2 atraviesa el Valle del Coloso…

La mayoría de los terrenos del Valle del Coloso pertenecen al sector privado. La Autoridad de Tierras de Puerto Rico es propietaria de 250 cuerdas de terreno. De éstas, 82.0 cuerdas son operadas por la entidad Agro Industria Azucarera del Oeste, Inc…

Los suelos en su mayoría son de aluvión por tratarse de una zona bañadas por importantes cuerpos de agua… El Valle del Coloso ha sido catalogado en la Asociación de los llanos aluviales según el Servicio de Conservación de Recursos Naturales del Departamento de Agricultura de Estados Unidos…

Así las cosas, el legislador le impuso a ciertas agencias y municipios, unas prohibiciones sobre su poder de otorgar permisos de uso, segregación, construcción, con relación a los terrenos protegidos. Al respecto, el Artículo 3 de la Ley Núm. 142, dispone:

> Se prohíbe a la Junta de Planificación y a los gobiernos municipales, cuyos lindes territoriales ubiquen dentro del área comprendida por el Valle del Coloso, la aprobación de consultas de ubicación, y a la Administración de Reglamentos y Permisos y dichos municipios no podrán otorgar ningún permiso de construcción o de uso que esté en contravención con la política pública declarada en el Artículo 1 de esta Ley. Además, dichas agencias y organismos gubernamentales no podrán autorizar segregaciones para la creación de fincas menores de diez (10) cuerdas en el área designada en la Resolución de Zonificación Especial, señalada en el Artículo 2 de esta Ley.

En el Artículo 2 de la Ley 142, se le ordena a la Junta de Planificación a que, en coordinación con el Departamento de Tierras, realice los estudios necesarios de las fincas comprendidas dentro del denominado Valle del Coloso, con el propósito de ordenar los terrenos protegidos mediante la promulgación y adopción de una resolución de zonificación especial. Además, el Artículo 5 de la Ley indica que, como parte del plan para confeccionar e implantar el desarrollo agrícola y el ecoturismo del Valle del Coloso, las agencias concernidas deben, entre otros criterios, identificar con exactitud la delimitación territorial de todos los terrenos que comprende el Valle del Coloso y establecer el deslinde específico del área geográfica que será designada para uso agrícola.

En cumplimiento con la Ley Núm. 142, ante, el 5 de diciembre de 2003, la Junta de Planificación adoptó el Reglamento de Zonificación Especial para las Reservas Agrícolas de Puerto Rico, Reglamento de Planificación Núm. 28 (6771) de 7 de febrero de 2004. Los mapas de delimitación y zonificación especial para las reservas agrícolas de los valles de Lajas, Coloso y Guanajibo, se hicieron formar parte integral del Reglamento. Véase: Junta de Planificación v. Frente Unido Pro Defensa del Valle de Lajas, res. el 26 de agosto de 2005, 2005 TSPR 117, reconsiderado en res. el 21 de octubre de 2005, 2005 TSPR 151. En el citado Reglamento, se amplió la cantidad de terrenos de la Reserva Agrícola del Valle del Coloso a, aproximadamente, 3,182 cuerdas, esto es, 197 cuerdas adicionales a las que inicialmente señalaba la Ley. Ello porque el legislador ordenó a la Junta de Planificación a incluir en la Resolución de Zonificación Especial aquellas tierras que colindaren con las identificadas de valor agrícola y que sirven de zona de amortiguamiento.

II

La Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, según enmendada, en su Artículo 3, 23 L.P.R.A. sec. 71b(h), define lotificación de la siguiente manera:

(h) Lotificación- es la división o subdivisión de un solar, predio o parcela de terreno en dos o

más partes, para la venta, traspaso… y, además, una mera segregación.

Por otro lado, el Artículo 22 de la mencionada Ley, 23 L.P.R.A. sec. 71u, dispone que a partir de la vigencia de la Ley será necesario un permiso de ARPE para poder efectuar una lotificación, según definida por la Ley, y menciona que, como norma general, no tendrá eficacia cualquier escritura pública en que se efectúe una lotificación si la misma no ha sido sometida y aprobada previamente por ARPE. Véase además, Banco Comercial v. Registrador, 118 D.P.R. 773 (1987).

Por su parte, el Artículo 3 del Reglamento de Lotificación, Reglamento de la Junta de Planificación Núm. 3, exime del permiso de ARPE a aquellas lotificaciones de fincas en la zona rural, para fines agrícolas, cuando el área, tanto del remanente como de cada una de las nuevas fincas, resulte ser de 25 cuerdas o más. En todos los demás casos, para segregar una propiedad, es requisito tener un permiso válido de ARPE.

Por último, debemos señalar que la anteriormente citada Ley Orgánica de ARPE dispone que la agencia se guiará, al considerar subdivisiones de terrenos para lotificaciones simples, por cualesquiera leyes aplicables y por la "conveniencia de evitar subdivisiones en áreas que no estén listas para tales desarrollos debido a… la importancia agrícola o de excepcional belleza de los

terrenos; la susceptibilidad a inundaciones de los terrenos…" 23 L.P.R.A. sec. 71h.

III

Aunque de carácter fundamental, el disfrute de la propiedad no es un derecho absoluto. Culebra Enterprise v. E.L.A., 127 D.P.R. 943 (1991). En beneficio del bienestar general, la Asamblea Legislativa puede establecer restricciones a tal derecho propietario entre las que se encuentra el poder de expropiación del soberano, que a su vez tiene unas limitaciones. A tenor con el mandato constitucional, "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley ...". Constitución del Estado Libre Asociado de Puerto Rico de 1952, Art. 2, Sec. 9. A su vez, el Código Civil de Puerto Rico dispone que "nadie podrá ser privado de su propiedad sino por autoridad competente, por causa justificada de utilidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley." Código Civil de 1930, Artículo 282, 31 L.P.R.A. sec. 1113.

Por consiguiente, toda propiedad se posee sujeta al poder del Estado de expropiarla para fines públicos. E.L.A. v. Compañía de Ferrocarriles de Puerto Rico, 83 D.P.R. 587 (1961). Como la facultad de expropiar es un atributo inherente a la soberanía del Estado, las únicas

limitaciones que pueden reconocerse a su ejercicio son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella. M. Mercado & Hijos v. Tribunal Superior, 85 D.P.R. 370 (1962). En consecuencia, una vez se establezca que el uso para el cual se destina la propiedad expropiada constituye un fin público, no corresponde a los tribunales revisar las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, la necesidad o lo adecuado del sitio en particular, porque ésta es una función que ejerce la legislatura bien directamente o delegándola en agencias y funcionarios. *Id.*

Ahora bien, en caso de ejercer ese poder inherente, el Estado tiene la obligación de actuar conforme al procedimiento provisto por la Ley de Expropiación, que regula los procedimientos de expropiación forzosa que realiza el Estado. Ley de Expropiación Forzosa del 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sec. 2901-2913. Véase además, Autoridad de Carreteras v. Adquisición de 8,554.741 metros, res. el 9 de octubre de 2007, 2007 TSPR 178; E.L.A. v. Sociedad Civil Agrícola e Industrial, 104 D.P.R. 392 (1975). En lo pertinente, se ha establecido que en un procedimiento de expropiación, la disposición definitiva de la propiedad expropiada ocurre cuando se dicta sentencia final en el caso. Iriarte Miró v. Secretario de Hacienda, 84 D.P.R. 171 (1961). Véase además, 32 L.P.R.A. sec. 2911. La sentencia final por sí sola

constituye el título del demandante a la finca expropiada, razón por la cual no es necesario ordenarle al demandado que otorgue una escritura transfiriendo el terreno objeto de la expropiación al demandante. Cerra v. Fajardo Development Co., 18 D.P.R. 1024 (1912).

IV

El *injunction* es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se le requiere a una persona que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra. Ley de 8 de marzo de 1906, 32 L.P.R.A. sec. 3521. Este remedio provisional o permanente se utiliza para hacer efectivo el derecho sustantivo que se está ejercitando en la demanda. Abella v. Fernández, 17 D.P.R. 1063 (1911). Véase además, D. Rivé Rivera, Recursos Extraordinarios, San Juan: P.R., Programa de Educación Legal Continuada de la Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1989.

Por otro lado, es menester señalar que el *injunction* es un remedio extraordinario que se caracteriza por su perentoriedad, por ser una acción dirigida a evitar un daño inminente o a reestablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico. Peña v. Federación de Esgrima de Puerto Rico, 108 D.P.R. 147(1978); Ortega Cabrera v. Tribunal

<u>Superior</u>, 101 D.P.R. 612 (1973). Además, por su naturaleza de recurso extraordinario, el *injunction* es de carácter discrecional. <u>Pérez Vda. de Muñiz v. Criado Amunategui</u>, 151 D.P.R. 355 (2000); <u>A.P.P.R. v. Tribunal Superior</u>, 103 D.P.R. 903 (1975); <u>Franco v. Oppenheimer</u>, 40 D.P.R. 153 (1929); <u>Martínez v. P.R. Ry. Light and Power Co.</u>, 18 D.P.R. 725 (1912).

Por razón del origen del *injunction* en las Cortes de equidad inglesas, el principio de equidad que gobierna su concesión o denegación exige que la parte promovente demuestre la ausencia de un remedio adecuado en ley. <u>Pérez Vda. de Muñiz v. Criado Amunategui</u>, ante. Se estiman como remedios legales adecuados aquellos que pueden otorgarse en una acción por daños y perjuicios, en una criminal o cualquiera otra disponible. *Id*. Por consiguiente, mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable, por lo que no procederá conceder el *injunction*. *Id*; <u>A.P.P.R. v. Tribunal Superior</u>, ante; <u>Franco v. Oppenheimer</u>, ante; <u>Martínez v. P.R. Ry. Light and Power Co.</u>, ante.

Dicho de otro modo, con relación a este remedio en equidad, constituye un daño irreparable aquel que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. <u>Pérez Vda. de Muñiz v. Criado Amunategui</u>, ante. En dichos casos procede el remedio de *injunction*. Ahora bien, la determinación de lo que constituye un remedio apropiado en ley y, por ende, daño

irreparable, va a depender de los hechos y las circunstancias de cada caso en particular. Martínez v. P.R. Ry. Light and Power Co., ante; Loíza Sugar Co., v. Hernaiz y Albandoz, 32 D.P.R. 903 (1924); Chardon v. Laffaye, 43 D.P.R. 650 (1932); A.P.P.R. v. Tribunal Superior, ante.

El *injunction* preliminar tiene el propósito de mantener el *status quo* hasta que se celebre el juicio en sus méritos, por lo cual la orden de *injunction* preliminar, ya sea requiriendo un acto o prohibiéndolo, evita que la conducta del demandado produzca una situación que convierta en académica la sentencia que finalmente se dicte, o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. Mun. De Ponce v. Gobernador, 136 D.P.R. 776 (1994). Al evaluar la procedencia de un *injunction* preliminar deben evaluarse los siguientes criterios: (1) la naturaleza de los daños que puedan ocasionársele a las partes de concederlo o denegarlo; (2) la irreparabilidad del daño o existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolver el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederlo; y (5) el posible impacto sobre el interés público del remedio que solicita. Mun. De Ponce v. Gobernador, ante; P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200 (1975).

Sin embargo, después del juicio en sus méritos y antes de ordenar un *injunction* permanente, el Tribunal debe

tomar en consideración, nuevamente, la existencia o ausencia de algún otro remedio adecuado en ley. Universidad del Turabo v. Liga Interuniversitaria, ante. Los factores que se deben tomar en consideración para emitir el recurso de *injunction* permanente son: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público envuelto; y (4) el balance de equidades. Universidad del Turabo v. Liga Interuniversitaria, ante; Southern Packing and Storage Co., Inc. v. United States, 588 F. Supp 532 (D.S.C. 1984); State Ex. Rel. Guste v. Lee, 635 F. Supp. 1107 (1986).

V

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap.III R.10.2, es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. Colón Muñoz v. Lotería de P.R., res. el 20 de abril de 2006, 2006 TSPR 65. El Inciso 5 de esta Regla establece como fundamento para solicitar la desestimación, que la demanda no expone una reclamación que justifique la concesión de un remedio. 32 L.P.R.A. Ap.III R.10.2(5).

Al resolverse una moción de desestimación por este fundamento, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido

aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. Colón Muñoz v. Lotería de P.R., ante; Sánchez v. Autoridad de los Puertos, 153 D.P.R. 559 (2001); Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497 (1994). Además, tales alegaciones hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *Id*; Dorante v. Wrangler, 145 D.P.R. 408 (1998).

La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. Reyes v. Sucesión Sánchez Soto, 98 D.P.R. 305, 309 (1970); Boulon v. Pérez, 70 DPR 988 (1950). Tampoco procede la desestimación, si la demanda es susceptible de ser enmendada. Clemente v. Departamento de la Vivienda, 114 D.P.R. 763 (1983). En fin, debemos considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida." Pressure Vessels P.R. v. Empire Gas P.R., ante; Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991).

Es de notar que aquellos casos en los que esté involucrado un alto interés público no debe desestimarse ninguna acción mediante este mecanismo procesal, salvo en aquellas ocasiones en que no quepa duda que bajo ninguna situación de hecho que surja lógicamente de la demanda es posible conceder un remedio adecuado, cualquiera que éste

sea. Véase, González Aristud v. Hosp. Pavía, res. el 13 de junio de 2006, 2006 TSPR 98.

VI

Con el anterior marco doctrinal en mente, pasemos a atender las controversias que nos atañen. En primer lugar debemos resolver si, desde su vigencia, la Ley Núm. 142, mejor conocida como la Ley de la Reserva del Valle del Coloso, le impedía a ARPE aprobar segregaciones menores de diez cuerdas o si, por el contrario, dicha Ley no era lo suficientemente específica para delimitar la Reserva, por lo que era necesario que la Junta de Planificación aprobara el Reglamento de Zonificación Especial para que entrara en vigor la referida prohibición.

La Autoridad de Tierras alega que los permisos de segregación otorgados por ARPE son nulos, por ser contrarios a la Ley y a la política pública anunciada en la misma. Afirma la agencia que la exposición de motivos de la Ley de la Reserva del Coloso es lo suficientemente específica para definir los terrenos protegidos y que el referido Reglamento lo que hizo fue ampliar la cantidad de tierras que especifica la Ley. De otro lado, la Comunidad Agrícola Bianchi aduce que al momento de ARPE autorizar la segregación del terreno no estaba vigente ni el Reglamento de Zonificación Especial ni el plano de delimitación del área de la Reserva, por lo que la reserva no había sido definida. Por consiguiente, sostiene que no había

prohibición alguna que evitara la segregación del terreno en controversia.

Como vimos antes, la Exposición de Motivos del cuerpo legal que nos incumbe especifica el área que comprende el valle e indica las cuerdas incluidas. Además, lo describe como aquel terreno que mantiene intacta su capacidad agrícola. Nos refiere a sus límites territoriales, a sus propietarios, e incluso nos indica que dichos terrenos han sido catalogados como zonas inundables por el Servicio de Conservación de Recursos Naturales del Departamento de Agricultura de Estados Unidos. El propio legislador declaró reserva agrícola los terrenos comprendidos en el denominado o conocido Valle del Coloso, dentro del cual aparece el terreno segregado en controversia.

Además, en la Ley Núm. 142 la Asamblea Legislativa reconoce la importancia de la agricultura, no solamente en el ámbito ecológico y ambiental, sino como un elemento esencial para la salud económica del pueblo. A tenor con ello, declaró como política pública la protección de los terrenos comprendidos dentro del Valle del Coloso y los designó reserva agrícola, por poseer ciertas características idóneas para destinarse al uso exclusivo de la producción agrícola y ecoturismo.

La Ley de la Reserva del Coloso prohibió que ARPE aprobara segregaciones de menos de diez cuerdas en el área designada en la Resolución de Zonificación Especial. El que dicha resolución no se hubiese promulgado con anterioridad

al otorgamiento de los permisos en controversia, no significa que ARPE estuviese autorizada a segregar terrenos que estaban claramente designados como protegidos por la Ley; todo ello en contravención, a su vez, a la política pública vigente. Las prohibiciones del Artículo 3 de Ley que crea la Reserva del Valle del Coloso, aplican desde la fecha en que entró en vigor dicha la Ley, esto es, desde el 4 de agosto de 2000. Lo contrario iría en total contravención con la política pública de conservación de terrenos del referido estatuto, al permitir que se desmembraran dichas tierras en unidades menores de diez cuerdas y para usos no agrícolas.

A tenor con lo dicho, ARPE se excedió en sus facultades al autorizar las segregaciones reseñadas en terrenos que formaban parte de la Reserva del Valle del Coloso. Por lo tanto, los permisos otorgados por ARPE son nulos por ser contrarios a la Ley Núm. 142 y a la política pública establecida por la Asamblea Legislativa. "No debemos olvidar que las leyes deben ser interpretadas y aplicadas sin desvincularlas del problema cuya solución persiguen, como parte de un todo coherente y armonioso del ordenamiento jurídico." Puerto Rico v. Frente Unido Pro Reserva del Valle de Lajas, ante.

Siendo nulos los permisos, las escrituras de segregación y compraventa otorgadas y suscritas por la Comunidad Agrícola Bianchi, por Ruiz Santiago y por Moreno Ruiz Developer son, igualmente, nulas; ello por carecer de

un permiso de segregación válido otorgado por ARPE, según exige la Ley Orgánica de dicha agencia y el Reglamento de Lotificación Núm. 3.

De otra parte, no existe controversia en torno al hecho de que los terrenos segregados fueron expropiados por la Autoridad de Tierras, quién demandó a la Comunidad Agrícola Bianchi, titular de los mismos de acuerdo a lo aquí resuelto. Habiéndose cumplido con los procedimientos de la Ley de Expropiación Forzosa y dictada una sentencia final y firme en el caso de expropiación, los terrenos del Valle del Coloso que una vez fueron propiedad de la Comunidad Agrícola Bianchi, todos ellos son patrimonio del Estado Libre Asociado, en particular bajo el manto de la Autoridad de Tierras.

En vista de lo anteriormente expuesto, resulta obvio que no procedía declarar con lugar la moción de desestimación, pues al interpretar liberalmente la demanda se establece una reclamación que justifica la concesión de un remedio. Según los hechos bien alegados en la demanda, si éstos fueran probados, los recurridos podrían ser responsables en daños y perjuicios por sus actuaciones y la Autoridad de Tierras tendría derecho a ser indemnizada.

Se reinstala el *injunction* preliminar, en vista del alto interés público envuelto, con el propósito de evitar que la conducta de Moreno Ruiz pueda convertir en académica la sentencia que finalmente pueda dictarse. Es decir, que la remoción de la corteza terrestre culmine en la erosión

total del suelo, lo que impediría la siembra o cultivo en el mismo.

VII

Por los fundamentos que anteceden, procede dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones y devolver el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                    FRANCISCO REBOLLO LÓPEZ
                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Tierras de Puerto
Rico

     Peticionarios

       vs.                    CC-2007-405     *CERTIORARI*

Moreno Ruiz Developer Corp.
y otros

     Recurridos

SENTENCIA

San Juan, Puerto Rico, a 24 de julio de 2008

Por los fundamentos expuestos en la Opinión que antecede, procede dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones y devolver el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo